FILED
United States Court of Appeals
Tenth Circuit

October 20, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

      v.

TRAVIS ALLEN PHILLIPS,

      Defendant - Appellant.

No. 08-3272

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D. Ct. No. 5:08-CR-40004-RDR-4)**

---

Submitted on the briefs:[*]

Dwight L. Miller, Topeka, Kansas, for Appellant.

Marietta Parker, Acting United States Attorney, and Jared S. Maag, Special Assistant United States Attorney, Office of the United States Attorney for the District of Kansas, Topeka, Kansas, for Appellee.

---

Before **TACHA**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-appellant Travis Allen Phillips was convicted of obstructing an official proceeding in violation of 18 U.S.C. § 1512(c)(2). The obstructive conduct for which Mr. Phillips was convicted involved disclosing the true identity of an undercover officer to a subject of Drug Enforcement Agency ("DEA"), local law enforcement, and federal grand jury investigations. On appeal, Mr. Phillips primarily argues that the evidence presented at trial was insufficient to sustain his conviction. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

The circumstances giving rise to Mr. Phillips's conviction began in early 2006 with a joint local and federal investigation into a possible conspiracy to distribute methamphetamine in Dodge City, Kansas. The initial target of the investigation was Augustine Sanchez, a man the DEA believed was trafficking multiple pounds of methamphetamine. Throughout the investigation, the officers' objective was to identify and arrest the source of the methamphetamine that was being distributed in Dodge City.

In the course of the investigation, officers learned that Mr. Sanchez employed Vincente Guzman in his methamphetamine trade. During a traffic stop in November 2006, officers arrested Mr. Guzman after discovering a quarter pound of methamphetamine in his car. Then, in April 2007, DEA and local law enforcement officers arrested Mr. Sanchez. Investigators were unable to uncover

Mr. Sanchez's source, however, and the investigation became somewhat dormant. But shortly after these two arrests, investigators learned Mr. Guzman's wife, Lizette Lopez, had taken over his methamphetamine business. The focus of the investigation into the methamphetamine source then shifted to Ms. Lopez.

At this point, a grand jury investigation was underway. By June 2007, law enforcement officers had testified before the grand jury, were working in conjunction with federal prosecutors, and had obtained wiretap orders and grand jury subpoenas from a federal judge in order to assist in their efforts to uncover the large-scale methamphetamine supplier.

When the focus of the investigation shifted to Ms. Lopez, investigators began using an informant to make controlled methamphetamine buys from her and her associates. In August 2007, after making several controlled buys from Ms. Lopez's associates, the informant introduced J.L. Bice, an undercover officer with the Gray County sheriff's department, to Ms. Lopez. The investigators intended for Officer Bice to make increasingly large controlled buys from Ms. Lopez in an effort to eventually uncover her source. Officer Bice was able to purchase one ounce of methamphetamine directly from Ms. Lopez.

The plan to uncover the source was abruptly thwarted, however, soon after Officer Bice's initial controlled buy. At that time, investigators learned that Mr. Phillips had revealed Officer Bice's true identity to Ms. Lopez. Investigators then quickly obtained and executed a search warrant for Ms. Lopez's home. During

the search, officers found two pieces of paper bearing Officer Bice's name and some information identifying him as a Gray County sheriff; they did not, however, uncover any evidence of methamphetamine trafficking or Ms. Lopez's supplier.

On January 23, 2008, the grand jury returned an indictment charging Mr. Phillips with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c).[**] During an interrogation following his arrest, Mr. Phillips voluntarily admitted revealing Officer Bice's true identity. He also repeated this admission several times while officers were driving him to his initial appearance. Indeed, the officers who transported Mr. Phillips testified that he joked and bragged about "burning" Officer Bice. There was also testimony that Mr. Phillips had boasted and laughed about this to an officer even prior to his arrest in this case.

At Mr. Phillips's trial, investigators testified that they believed the lack of methamphetamine trafficking evidence in Ms. Lopez's home was directly attributable to Mr. Phillips's disclosure of Officer Bice's true identity. Furthermore, investigators testified that after executing the search warrant at Ms. Lopez's home, the investigation essentially stopped, because investigators had no other avenues for uncovering Ms. Lopez's source. Indeed, officers testified that they were never able to determine who was supplying methamphetamine to Ms.

---

[**]Mr. Phillips was also charged with conspiring with Ms. Lopez and others to distribute methamphetamine. The district court ultimately dismissed that count, and it is not relevant in this appeal.

Lopez. The jury convicted Mr. Phillips. He was sentenced to 24 months' imprisonment. He now appeals the sufficiency of the evidence at trial, contending that the government did not prove he had the requisite intent under § 1512(c)(2).

## II. DISCUSSION

A.  Section 1512(c)(2)'s Mens Rea Element

Under § 1512(c)(2), any person who "corruptly. . . obstructs, influences, or impedes any official proceeding or attempts to do so, shall be fined under this title or imprisoned not more than 20 years or both." 18 U.S.C. § 1512(c)(2). In this case, the jury was properly instructed that an "official proceeding" includes proceedings before a grand jury.[***] *Id.* § 1515(a)(1)(A).

In *United States v. Aguilar*, 515 U.S. 593, 599 (1995), the Supreme Court considered the intent element under 18 U.S.C. § 1503, which is phrased similarly to § 1512(c)(2). *See* 18 U.S.C. § 1503(a) (stating that "[w]hoever corruptly . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice" may be punished). In an effort to "place metes

---

[***]Mr. Phillips contends that a joint local and federal drug investigation does not constitute an official proceeding for the purposes of § 1512(c)(2) and that accordingly, evidence that he obstructed such an investigation is insufficient to support his conviction. The district court, however, specifically determined that a DEA investigation is not an official proceeding under the statute and instructed the jury that "'[a]n official proceeding' means a proceeding before a federal judge or federal court of the United States or a Federal grand jury." Thus, this question was resolved in Mr. Phillips's favor below, and we do not have occasion to decide it in this appeal.

and bounds on the very broad language" of § 1503, the Court held that to be convicted under that section a defendant must act with the intent that his actions will influence a proceeding. Accordingly, the Court determined that § 1503 requires that a defendant's obstructive conduct have a nexus in time, causation, or logic with the proceeding the defendant is charged with obstructing. *Id.* In other words, interference with the proceeding must be the natural and probable effect of the defendant's conduct under § 1503. *Id.* In this way, we have explained that "[t]he nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of 'corruptly' obstructing." *United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009) (quotations omitted).

In *Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005), the Court extended the *Aguilar* nexus requirement to prosecutions under § 1512(b), which prohibits (among other acts) intentionally and corruptly persuading another person to withhold documents from an official proceeding. In that case, the Court relied on *Aguilar* to determine that although a proceeding need not be pending under the statute, it must be at least foreseeable to the defendant, because a defendant who "'lacks knowledge that his actions are likely to affect [a] judicial proceeding . . . lacks the requisite intent to obstruct.'" *Id.* (quoting *Aguilar*, 515 U.S. at 599).

The Supreme Court has not determined whether the *Aguilar* nexus

requirement extends to § 1512(c)(2).  Two circuits, however, have applied the *Aguilar* nexus requirement to § 1512(c)(2), *see United States v. Reich*, 479 F.3d 179, 186 (2d Cir. 2007) (Sotomayor, J.); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (assuming arguendo that the *Aguilar* nexus requirement applies to § 1512(c)(2)), and we are aware of no court that has explicitly rejected this approach.  Considering the similar statutory language of §§ 1503 and 1512(c)(2), the Supreme Court's recent extension of the *Aguilar* nexus requirement to another subsection of § 1512, and other circuits's application of the *Aguilar* nexus requirement to § 1512(c)(2), we hold that § 1512(c)(2) incorporates the nexus requirement as articulated by the Supreme Court in *Aguilar*.

B.     Sufficiency of the Evidence

We now turn to the evidence adduced at trial.  We review the sufficiency of the evidence to support a jury verdict de novo and examine only whether taking the evidence, both direct and circumstantial, "in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."  *United States v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999) (quotations omitted).  Therefore, the evidence supporting a jury verdict must be substantial, but "it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt."  *United States v. Burkley*, 513 F.3d 1183, 1188 (10th Cir. 2008) (quotations omitted).

In this case, Mr. Phillips contends that the evidence only demonstrates he was aware Officer Bice was a policeman, not that he was aware of an ongoing or future federal grand jury investigation. He argues that this is insufficient to establish the requisite mens rea under § 1512(c)(2). We disagree with Mr. Phillips's assessment of both the law and the evidence adduced at trial. First, § 1512(c)(2) does not require that the defendant know of the existence of an ongoing official proceeding. *See* 18 U.S.C. § 1512(f)(1). Rather, a conviction under the statute is proper if it is foreseeable that the defendant's conduct will interfere with an official proceeding. Or, in terms of the *Aguilar* nexus requirement, a conviction is proper under the statute if interference with the official proceeding is the "natural and probable effect" of the defendant's conduct. *Aguilar*, 515 U.S. at 601. Second, § 1512(g)(1) makes clear that the government need not prove the defendant knew that the official proceeding at issue was a federal proceeding such as a grand jury investigation. *See* 18 U.S.C. § 1512(g)(1) ("In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance . . . that the official proceeding before a judge, court, magistrate judge, grand jury, or government agency is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency.").

Turning to the evidence in this case, a reasonable jury could conclude that the natural and probable effect of disclosing Officer Bice's identity was impeding

a federal grand jury investigation into Ms. Lopez's methamphetamine distribution and her supply source. Indeed, given the evidence presented at trial, a jury could find that Mr. Phillips had no purpose other than to thwart such an investigation. The evidence and reasonable inferences therefrom tended to show that Mr. Phillips knew: (1) Officer Bice was a law enforcement officer; (2) he had been or would be attempting to make controlled purchases from Ms. Lopez; and (3) at least two other methamphetamine distributers in Dodge City had been arrested in the approximately ten preceding months. The jury also heard extensive evidence that Mr. Phillips consistently boasted to law enforcement officers that he had "burned" Officer Bice, which begs the inference that he actually intended to obstruct the investigation into the methamphetamine trade in Dodge City—of which the federal grand jury proceedings were a necessary part. Therefore, viewing this evidence in the light most favorable to the government we determine that a reasonable jury could find Mr. Phillips guilty beyond a reasonable doubt of obstructing an official proceeding, which was the grand jury investigation into the methamphetamine trade in Dodge City.

### III. CONCLUSION

In this case there was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Mr. Phillips obstructed the federal grand jury investigation into the methamphetamine trade in Dodge City in violation of 18 U.S.C. § 1512(c)(2). Therefore, we AFFIRM Mr. Phillips's conviction.